644 P.2d 528

**Douglas COWAN and Cecilia M. Cowan, Plaintiffs-Appellees,**

v.

**Chris CHALAMIDAS, Defendant-Appellant.**

No. 13994.

Supreme Court of New Mexico.

April 20, 1982.

Carl J. Schmidt, Albuquerque, for defendant-appellant.

Bruce A. Kelly, Bargas & Zvolanek, Alan F. Zvolanek, Albuquerque, for plaintiffs-appellees.

## OPINION

FEDERICI, Justice.

This case involves the issue of the propriety of the assignment of a lease. Chalamidas (lessor) and the Cowans (lessees) entered into a commercial lease in 1976. The lease agreement permitted lessees to sell their interest under the lease in accordance with certain terms of the lease. Ten months after the lease took effect, the lessees decided to sell their interest. For disputed reasons they were unable to find a satisfactory buyer and subsequently vacated the premises.

The lessees subsequently sued the lessor, alleging that he had, in violation of the lease, unreasonably withheld his consent for the lessees to sell their interest to a third party (Stewart and Padilla). A non-jury trial was held. The court made the following findings, relevant to this appeal:

4. That the lease provides in part that in the event of the sale or lease of the premises by Plaintiffs, that the Defendant had the right to approve or disapprove of a prospective purchaser, which approval or disapproval shall not be unreasonably withheld.

5. That said lease in part provided that the Plaintiffs would pay to Defendant one-half of any sale price.

6. That in June 1977, Plaintiffs entered into an agreement with Gil Stewart and Dominic Padilla to sell their leasehold interest to said individuals for the price of $15,000.00 plus the last two months rent totaling $812.00.

7. That this agreement was communicated by the Plaintiffs to the Defendant.

8. That Mr. Stewart and Mr. Padilla also agreed to pay an additional $5,000.00 to Plaintiffs for the liquidated damages which they would lose as a result of the sale of their leasehold interest.

9. That this agreement in which an additional $5,000.00 would be paid to Plaintiffs was also communicated to the Defendant.

10. That the Defendant refused to allow the transfer of the leasehold interest to Mr. Stewart and Mr. Padilla on the grounds that they were financially unstable.

11. That several days after Plaintiff had left the premises, the Defendant entered into an agreement with Mr. Stewart and Mr. Padilla under which they were allowed to lease the liquor license and the same premises.

12. That the Defendants [sic] refusal to allow the Plaintiffs to sell the leasehold interest to Mr. Stewart and Mr. Padilla was unreasonable.

Based upon these findings, the trial court concluded that the lessees were entitled to $7,906.00 in damages, representing one-half of the $15,812.00 offer on which the lessor unreasonably withheld his approval; that lessees were entitled to an additional $5,000.00 in liquidated damages as a result of this unreasonable withholding of approval; and that these two items of damages should be offset by the lessor's counterclaim of $3,166.67 which was undisputed at trial. The lessor appealed. We affirm.

### I.

The first issue we address is whether the court was correct in allowing lessees to recover under the lease.

The lessor contends that the evidence is clear that the lessees were in direct breach of their agreement due to their failure to pay taxes and due to their failure to pay rent on time. He asserts that the law is clear that a person who has breached a contract is not entitled to recover under the contract, citing Williston on Contracts § 812 (3d ed. 1962).

These arguments can be dismissed after a review of the court's findings which reveal that the lessor failed to prove a default or that the lessees' breach preceded his own, to the trial court's satisfaction. It is elementary that factfinding is a matter entirely within the province of the trial court, *Watson Land Company v. Lucero*, 85 N.M. 776, 517 P.2d 1302 (1974), and that an appellate court should indulge all reasonable inferences in support of a verdict. *See State ex rel. Santa Fe Sand & G. Co. v. Pecos Const. Co.*, 86 N.M. 58, 519 P.2d 294 (1974).

Furthermore, it should be noted that while lessor's arguments may be dispositive under some circumstances, we are persuaded by the rationale that, "[a] plaintiff who is himself in substantial default in rendering his agreed exchange for the defendant's promised performance cannot, *in the absence of waiver*, maintain suit on the contract." 5A Corbin, Corbin on Contracts § 1124 at 11–12 (1964) (emphasis added). A review of the record reveals evidence that would support the conclusion that the lessor waived his right to complain as to the lateness of the rent. Either the lessor's acceptance of ownership of the liquor inventory as payment, or his acceptance of the late rent check, could be construed as a waiver of his right to complain as to late payment. When a contract payee accepts late payments without objection as to their timeliness, he impliedly leads the payor to believe that late payments are acceptable. *Harrison v. Puga*, 4 Wash.App. 52, 480 P.2d 247 (1971).

The lease in this case makes no mention of the lessor's obligation to give any notice

upon a failure to pay rent. There is no evidence in this record of the lessor giving the lessees notice; indeed, there is evidence that the lessor encouraged the lessees to stay on the premises through the end of the monthly period for which the rent was owed, on through the Fourth of July weekend, which strengthens the waiver theory.

The trial court did not make a specific finding that there was a waiver here nor did it specifically hold that the lessees were not foreclosed from bringing this action. However, it did refuse to accept the lessor's proffered Conclusion of Law No. 3: "That the Plaintiffs, having been in default of the terms of the Lease Agreement by failure to pay June rent are foreclosed from bringing this action." The trial court, in awarding the lessees damages under this contract, obviously found they were not foreclosed from bringing this action. Refusal by the trial court to make findings favorable to an unsuccessful party which would contradict its other findings is not error. *Den-Gar Enterprises v. Romero*, 94 N.M. 425, 611 P.2d 1119 (Ct.App.), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980).

In light of all of these factors, we uphold the trial court's allowing recovery of damages by the lessees under this lease.

## II.

The second issue we address is whether the lessor unreasonably withheld his consent to the assignment of this lease to a third party.

Although the evidence is undisputed that Stewart and Padilla made an offer to purchase the lessees' interest in this leasehold, obviously before the lessor could consent or refuse to consent, he must have been aware of the offer. The evidence is conflicting as to the lessor's knowledge. There is the testimony, however, of one of the lessees that he telephoned the lessor more than once that Stewart and Padilla had offered to purchase the leasehold.

It is not the function of this Court to weigh the evidence, or pass on the credibility of the witnesses where there is substantial evidence to support the findings made by the trial court. *First National Bank of Santa Fe v. Wood*, 86 N.M. 165, 521 P.2d 127 (1974). The trial court was in a position to view the credibility of the witnesses and it apparently believed the testimony of the lessees rather than that of the lessor, for it found that the offer had been communicated to the lessor. Because there is substantial evidence in the record to support the trial court's finding that the lessor knew of this offer, we accept this finding and address the reasonability of the lessor's refusal to consent to this assignment.

This Court recently addressed the issue of consent of a landlord to a subleasing agreement. In *Boss Barbara, Inc. v. Newbill*, 97 N.M. 239, 638 P.2d 1084 (1982), this Court held that a landlord may not unreasonably and arbitrarily withhold consent to a subleasing agreement when the lease agreement merely provides that the tenant must obtain the written consent of the landlord before subleasing.

In deciding this issue, the *Boss Barbara* Court stated:

> The rationale for requiring a landlord to act reasonably when withholding consent to a subleasing agreement under a provision such as in the case at bar is that a lease, being a contract, should be governed by general contract principles of good faith and commercial reasonableness. *Fernandez v. Vazquez*, 397 So.2d 1171 (Fla.Dist.Ct.App.1981). *Under this view, consent is not to be withheld unless the prospective tenant is unacceptable, using the same standards applied in the acceptance of the original tenant.*

*Id.*, 97 N.M. at 240–41, 638 P.2d at 1085–86 (citation omitted) (emphasis added). The *Boss Barbara* lease simply required that the tenant obtain the written consent of the landlord before subleasing the premises. In this case, the lease provided that while the lessor has the absolute right to approve or disapprove any prospective purchasers, such approval or disapproval "shall not be unreasonably exercised." In reviewing the trial court's finding that the lessor's refusal to allow the lessees to sell their leasehold in-

terest to Stewart and Padilla was unreasonable, we must bear in mind that to be reasonable, "consent is not to be withheld unless the prospective tenant is unacceptable." *Id.*

The trial court noted in its findings that the lessor refused to allow the transfer of the leasehold interest to Stewart and Padilla on the grounds that they were financially unstable. However, the evidence is uncontradicted that the lessor leased the premises to the same third party within one week of the original lessees' abandonment of the premises. Any financial unstability of these prospective tenants did not deter the lessor from ascertaining them to be acceptable lessees. Accordingly, we affirm the trial court's finding that the lessor's withholding of consent to the transfer of this leasehold interest was unreasonable.

The trial court is affirmed.

IT IS SO ORDERED.

EASLEY, C. J., and PAYNE, J., concur.